## WRIGHT'S LESSEE v. JEREMIAH CANNON et al.

High Court of Errors and Appeals. August, 1796.

*Rodney's Notes.*\*

*J. Miller, Wilson, Peery* [for plaintiff]. *Bayard, Ridgely* [for defendants].

*Bayard.* Deed from Keziah Wright and Jeremiah Cannon, administrators of Peter Hubbert, March 8, 1788, to William Sluby etc. Acknowledged September 1, 1788. Ejectment served, June 15, 1788. Cannon is tenant in possession. 4 Term 122, devisee admitted to defend without possession.

*Ridgely.* The land was sold by order of Orphans' Court. Report or return, August 10, 1786. Entry made of it, but no confirmation appears.

*J. Miller.* Deed was not executed at the time it was dated.

*Wilson.* Bradley was present and witness to the deed, also P. Kollock. [It] was executed at his house, August 15, 1788. Cromp. 192, 2 Esp.N.P. 159, Barnes 193, landlords, in order to be admitted co-defendants must be either in the actual receipt of the profits or in possession.

*Ridgely.* September 6, 1785, petition dated. 5 Burr. 2785, all the several parts of a conveyance operate as one act. [2] Esp.

---

\* This case is also reported in *Wilson's Red Book, 240; Bayard's Notebook, 98.*

N.P. 165, not to be extended further than to prevent mere strangers.

*Bayard.* Judgment, February, 1782, obtained by plaintiffs.

*J. Miller.* Morg. Ess. 364 and 365. The party who has the interest must procure himself to be made defendant. Plaintiffs brought their action before defendants got possession.

Adjourned. Court considered and were of opinion that the rule be made absolute and Sluby and Smith be admitted as co-defendants.

Peter Hubbard died March 10, 1777. Keziah Wright and Jeremiah Cannon, administrators of deceased. Judgment obtained by Wright, the plaintiff, against the administrators, if assets; August, 1782, revived by *scire facias.* Judgment rendered thereon August, 1785. June, 1787, *fieri facias* issued returnable to August following for residue. Sheriff returned an inquisition that the lands would not rent. August, 1787, *venditioni exponas* issued, returned November following, "Sold to E. Wright," and on the 9th of May, 1788, deed made from sheriff to Wright.

Defendant's proceedings. September 6, 1785, petition proffered to Orphans' Court by the administrators aforesaid for an order to sell the lands of their intestate. Order for sale granted at same time thereon, December 10, 1785. Sold by administrators to Smith and Sluby. Return made thereof August 10, 1786, and accepted by the court. Deed to Smith and Sluby dated March 8, 1788, executed August 15 following.

*Wilson,* for plaintiff, claims by sheriff's sale and deed, on judgment obtained against administrators of Peter Hubbard, £300; May, 1785, *scire facias* to revive judgment. Judgment confessed, if assets. *Fieri facias,* September 19, 1785, and *venditioni exponas* issued. Returned, May, 1786 . . . attachment issued; returned, November, 1786, unsold for want of time. Attachments issued, November, 1786; returned, sold for £15. *Fieri facias* for residue, February, 1787. Inquiry held June 20, 1787; return, lands sold to Edward Wright for £300 by sheriff on *venditioni exponas,* November 5, 1787. Deed from P. F. Wright, Sheriff, to Edward Wright, dated May 9, 1788, for 567¼ acres. Sluby and Smith were added as co-defendants.

George Adams, to prove tenants in possession, says Edward Brown lived on the land in dispute. He rented it of Jeremiah Cannon. Five or six years ago Shiles rented of P. Hubbard. Nathaniel Bell lived in the house that P. Hubbard used to live in, four or five years ago; Peter Hubbard lived there thirty years ago.

John Neille, says John Moore told him he paid rent to Jeremiah Cannon, [who] has been dead three or four years—also heard Joshua Shiles say he paid rent to Cannon. Cannon claims to hold all the property of P. Hubbard but how, does not know.

*Ridgely,* for defendants, produced and read to the jury order of Orphans' Court to Jeremiah Cannon etc., administrator of P. Hubbard, to sell the lands of said Hubbard, also return of sale, and deed for the same to Sluby and Smith for £978.

Counsel for plaintiff and defendant agreed that the jury may find a special verdict, which they did, and do pray the opinion of the Court as to the law in this case.

Argument on special verdict.

*Peery.* That the judgment obtained by Wright against Hubbard's administrators is a lien on the lands of Peter Hubbard, deceased. 2 Bac.Abr. 363, as to lands; they are bound from the time of the judgment. When a court takes cognizance of and proceeds to judgment against a party, they cannot get clear of it; no other court can proceed. Act of Assembly 1776, [2 Del. Laws 1071]. From the time judgment is obtained or entered, [it] is a lien on lands. Judgment of Wright is prior to any application to Orphans' Court. [1] Dall. 450, *Hougton against Wile,* judgment for creditor who obtained judgment in preference [to] attachment sued out. Have the Orphans' Court power to deprive us of benefit of a judgment entered prior to application to that court? It does not appear that Smith and Sluby ever had obtained a judgment.

*Bayard.* Petition, September 6, 1785; if the plaintiffs have any defense it is on the judgment, whether it is a lien on the lands before execution, so as to preclude proceedings of sale by order of Orphans' Court. Lands do not vest in the hands of executors as assets, but descend to his heirs. Executors and heirs [are] distinct persons; therefore judgment against administrators is not against the heirs. Executor cannot dispose of lands to discharge debts, without authority from court. Chattels alone vest in executors, lands in the heir. An execution only binds assets, judgment binds lands. Plaintiff's proceedings against the chattels in the hands of the administrator cannot bind the lands vested in us by order and sale of Orphans' Court. Case in Dallas does not apply. September 16, judgment entered; attachment sued out the 5th. Judgment had relation to first day of the term, the 4th September.

*Peery.* Laws of this state different from laws of England with respect to lands. The late Act of Assembly admits that

by the former laws of this state lands were bound by a judgment against administrators.

*Bayard.* It is not necessary for a person who purchases at the sale of administrators, to be creditor. Late Act of Assembly [has] no reference to this case, being made since the action brought. Act of Assembly obliging administrators to pay debts in following order. By Statute, 27 Edw. III, c. 9, and 23 Hen. VIII, c. 6, lands subject to be sold for benefit of commerce by the Statutes of Bankruptcy; by Statute Westminster, c. 2, a moiety of tenant's lands subject to execution.

*Wilson* for plaintiffs in appeal (to wit, Wright etc.). Question is whether the plaintiffs below, who purchased at sheriff's sale, or defendants, who purchased under the order of Orphans' Court [should win]. Power of executors is over lands, and they must vest in them as assets. 1 Body Laws 49 now repealed; lands formerly were considered as chattels in hands of executors; that lands have been taken in execution by process against administratrix so long back as we can trace from our records; that many titles have depended on this practice too long now to be shaken. [1] Dall. 481, that judgments against administrator in Pennsylvania were binding on the lands of intestate. Pennsylvania Laws, 6[1] and 49,[2] lands shall be subject to be sold under judgments obtained against the owner, his heirs, executors, administrators. 4 Del.Laws 124, judgment against a person shall bind lands. No law that says judgment against administrator shall not bind. [1] Dall. 131, whether a prior recognizance creditor or subsequent judgment creditor shall have the preference. Prec. Ch. 546, in all cases of concurrent jurisdiction the court in which proceedings begin, there [they] may be carried on, and cannot be stopped by another court. Burr. 2785, admittance relates back to the surrender; where several parts are necessary in a conveyance, they shall all have relation to the chief or principal part. Burr. 2639, order of Orphans' Court no judicial authority or no part of the sale of lands.

*Major Peery* for plaintiffs. It is a principle in this country [that] there has not been a necessity for suit against the heir. Administrator stands in place of the heir. 2 Bac.Abr. 363, 2 Atk. 461, in a judgment, no necessity to take out execution in

---

[1] A relevant statute is the Chapter VI found in *Laws Enacted in the Sixth. General Assembly etc.* . . . *of Pennsylvania* (Philadelphia, 1782), II, 12; esp. s. 30, at p. 19.

[2] A relevant statute is the Chapter XLIX found in *Acts of the General Assembly of the Commonwealth of Pennsylvania* (Philadelphia, 1782), at p. 98, esp. s. 17, at p. 109.

order to make it a lien on the lands. This case relates to the assets of a bankrupt.

*Miller* for plaintiff. First judgment obtained by plaintiff, which should attach on the lands in preference to a subsequent one. 4 Bac.Abr. 409, Imp.K.B. 262, 18 Vin.Abr. 285 pl. 1, relation shall never divest any right legally vested in another between his death and administration. Ch.R. 240, Cro.Jac. 264, if one covenants that I. S. shall have all the trees now standing, it refers to those standing at the delivery, and if any fall in the intermediate time he cannot recover them.

*Ridgely* for defendants. A judgment against administrators does not bind lands. This is a principle that never was denied, yet at common law lands could not formerly be sold by execution until 13 Edw. I. 2 Bac.Abr. 328, [lands] not liable only in case of the king and heir. Judgment cannot bind chattels, there must be execution. 10 Vin.Abr. 567 pl. 14, execution shall not bind a personal estate until the time writ is delivered to sheriff. The law of Pennsylvania of 1700 [has] no effect or operation in this state. 1 Body Laws 301, for regulating intestate estates, such lands may be sold as Orphans' Court shall order to pay debts, support children etc. 4 Bac.Abr. 636 pl. 4, where a power is given by a statute everything necessary to complete their proceedings shall be implied. 11 Vin.Abr. 32–69. Defendant's judgment and execution thereon was not against the lands until eighteen months after the order of Orphans' Court. Judgment is against the goods of the intestate only and cannot bind lands. 1 P.Wms. 279, judgment is only a general security, not a specific lien on the lands.

*Bayard* for defendants. There are two opposite titles. Plaintiff's title might perhaps have been good if defendants had not interfered. Who has the first title? Our title originated September 5, 1785, when the application was made to the Orphans' Court. Administrator is the officer of the court. If it did not originate September 5, it did when the sale was made or on the return, August, 1786. The deed is the shell or formal part of the title only, and only evidence of it, therefore no part of the essence or substance thereof. Judgment against a man in his lifetime is a lien on the lands; not so against administrator, either at common law or by statute.

In the special verdict found by the jury in the action of ejectment, *Wright's Lessee v. Cannon and others,* on which they pray the opinion of the Court: First, it is admitted a judgment was obtained by plaintiffs against administrators, if assets. Plaintiffs contend that this judgment is a lien on the lands of the intestate,

[and] that the Orphans' Court have not power to deprive them of the benefit of a judgment entered in Common Pleas prior to application for sale of the lands. [1] Dall. 450. Secondly, it appears the lands of the intestate were sold by the administrators to the defendants by virtue of an order of the Orphans' Court, return thereof made and confirmed by the court, according to the course of the said court, prior to the execution for the sale of said lands issuing from the Court of Common Pleas.

Defendants contend that a judgment against administrators binds assets, only an execution binds land. That assets only vests in administrators and lands in the heir; that administrators cannot dispose of lands without authority from the Orphans' Court to pay debts. That an Act of Assembly enjoins administrators to pay debts according to their priority, as funeral expenses, state debt, bonds, notes, book accounts etc.; therefore what the plaintiffs contend for would be inconsistent with said Act, if administrators could go into court and confess judgment to any creditor. All the creditors are foreigners.

[PER CURIAM.] First, it is considered by the Court that a judgment confessed or obtained against administrators is not a lien on the lands of the intestate. Secondly, that the sale of the lands under an order of the Orphans' Court was prior to the execution to take the lands. And thirdly, by our Act of Assembly, administrators are enjoined to pay debts according to their priority as state debts, bonds, notes, etc. Therefore what the plaintiffs contend for should be inconsistent with said Act, if an account creditor could obtain judgment and have the preference of bond and other creditors.